UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| HCA Health Services of New Hampshire, Inc. d/b/a Portsmouth Regional Hospital and Parkland Medical Center | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| Martin's Point Healthcare, Inc. | ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, HCA Health Services of New Hampshire, Inc. ("HHSNH") d/b/a Portsmouth Regional Hospital and Parkland Medical Center (together, the "Hospitals") complains of Defendant, Martin's Point Healthcare, Inc. ("MPHC") as follows:

## NATURE OF THE ACTION

1. This is a civil action for breach of a contract. The Hospitals are parties to two similar Hospital Service Agreements with MPHC, each executed by MPHC on December 11, 2012 and with an effective date of November 1, 2012 (hereinafter collectively referred to as the "Agreement"). The Hospitals allege MPHC has failed to pay amounts due under the Agreement for health care services rendered.

2. The Agreement is a managed care contract pursuant to which MPHC contracts with health care providers, including the Hospitals, to provide or arrange to provide health care services to individual patients, referred to by MPHC as "members," who are enrolled in health benefit plans managed by MPHC. This civil action arises from MPHC's refusal to pay the Hospitals the compensation promised under the Agreement and MPHC's set-off, or so-called

"recoupment," against amounts owed to the Hospitals that MPHC unilaterally and retrospectively paid to itself. This action follows the exhaustion and/or manifest futility of the Hospitals' pre-litigation efforts to cause MPHC to self-correct or otherwise resolve the parties' dispute, both directly and through counsel, which MPHC expressly and repeatedly confirmed it refuses to do.

## THE PARTIES

3. HHSNH is a corporation organized under the laws of the State of New Hampshire with a principal place of business located other than in the State of Maine.

4. On information and belief, Defendant MPHC is a corporation organized under the laws of the State of Maine with a principal place of business in Portland, Maine and doing business in New Hampshire.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because HHSNH, as plaintiff, is a citizen of New Hampshire and MPHC, as defendant, is a citizen of Maine, and the amount in controversy exceeds $75,000, exclusive of interest, costs and fees.

6. This Court has personal jurisdiction over MPHC, because it regularly does substantial business in New Hampshire under the Agreement and otherwise, and the Agreement expressly contemplates dispute resolution taking place in New Hampshire where the Hospitals are located.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

**BACKGROUND**

8. The Hospitals are acute care hospital facilities and related health care facilities known as Portsmouth Regional Hospital and Parkland Medical Center located in Portsmouth, New Hampshire and Derry, New Hampshire, respectively.

9. MPHC is organized as a not-for-profit health care organization with two distinct business enterprises, one involving the direct delivery of clinical patient care through seven health care facilities it operates in Maine and New Hampshire; MPHC's other business is health plan administration, including the regional management of the U.S. Family Health Plan, a TRICARE plan provided by the U.S. Department of Defense for military families and military retirees in several states in the northeast. This action arises out of the latter business.

10. The U.S. Family Health Plan administered by MPHC is promoted as a "unique TRICARE Prime option available only in Maine, New Hampshire, Vermont, upstate New York and northern Pennsylvania" and is a fully at-risk managed care health plan administered by MPHC under a separate business agreement between MPHC and the United States Department of Defense. MPHC's U.S. Family Health Plan currently serves approximately 44,000 patients or "members", principally in the Maine/New Hampshire area.

11. In addition to MPHC's management of the U.S. Family Health Plan in its designated region, the U.S. Family Health Plan also operates in five other regions (six in total) comprised of sixteen states and the District of Columbia. As with MPHC, the administration of the U.S. Family Health Plan in other regions is controlled by separate business agreements between the U.S. Department of Defense and private plan administrators. In approximately 1997, the U.S. Family Health Plan was conformed to be offered as a so-called "TRICARE Prime" benefit.

12.     TRICARE Prime is maintained and offered by the U.S. Department of Defense as a "managed care" health plan with a network of local, civilian health care providers and facilities such as the Hospitals.  Patients or "members" choose a network primary care provider (PCP) who provides most of their care and coordinates referrals to specialists and hospitals.  In general, covered services under the TRICARE Prime plan are provided by PCPs, specialists and health care facilities at low or no cost to the member, whose cost of care is paid for by the U.S. Family Health Plan/TRICARE Prime managed care contractor, such as MPHC.

13.     In turn, the regional TRICARE managed care contractors like MPHC enter into direct agreements with various health care providers and facilities, such as the Hospitals, by which the providers and facilities agree to provide care to plan members under the terms, conditions and agreed compensation specified by those agreements.  These underlying provider agreements are likewise fully at-risk contracts pursuant to which the managed care contractor (such as MPHC) agrees in advance to pay a particular schedule of compensation for services defined in the agreement and the providers (such as the Hospitals) agree to accept the compensation paid by MPHC as payment in full for the services except for any "cost sharing" pursuant to which a patient or member may be responsible for certain additional amounts in the form of deductibles, co-payments and/or co-insurance.

14.     The Agreement between MPHC and the Hospitals is an example of the provider agreements entered into between the regional contractors managing the U.S. Family Health Plan/TRICARE Prime benefit plan and private health care providers and facilities providing patient services.  The Agreement (copies of which are attached to this Complaint as Exhibits A and B and incorporated by reference herein), define the controlling terms and conditions, including the compensation to be paid, of the contract between MPHC and the Hospitals.

### THE AGREEMENT

15. Pursuant to Section 5 and Attachment A of the Agreement, MPHC agreed to reimburse the Hospitals for Covered Services, less any applicable co-payments, co-insurance or deductible, as follows.

1. <u>Inpatient Care</u>
   Inpatient care is reimbursed consistently with one hundred percent (100%) of the TRI CARE DRG Payment Methodology. . .

2. <u>Outpatient Services</u>
   Outpatient services are reimbursed at the lesser of (i) bill charges, or (ii) the applicable TRI CARE OPPS ambulatory payment classification (APC) group payment. . .

Agreement at Section 5, Attachment A.

16. Under the Agreement, MPHC is also obliged to "comply with provisions of all applicable state and federal laws and regulations." Agreement at Section 4.1.

17. The compensation to which the Hospitals are entitled under the Agreement may only be amended by written mutual agreement of the parties. Agreement at Section 5.1.

18. Although MPHC may offset future payments to the Hospitals to correct duplicate or erroneous payments, it is obliged to "correct and pay [the Hospitals] underpayments of amounts due by [MPHC] under this Agreement regardless of cause." Agreement at Section 5.3.2.

19. MPHC must indemnify the Hospitals for "any and all . . . loss, damage, claim or expense of any kind, including costs and attorneys' fees, which result from the negligent or willful acts or omissions by [Martin's Point its agents or employees]." Agreement at Section 6.6.

## MPHC's BREACH

20. In 2015, MPHC announced for the first time it would offset against or "recoup" previous payments made to the Hospitals and then refused to pay additional amounts to the Hospitals due under the Agreements, asserting it need not reimburse the Hospitals for certain

5

outpatient services, specifically emergency department services, when those services preceded an inpatient admission. As justification, MPHC argued the Agreement entitled it to do so, because (a) Section 5.1 of the Agreements provides that "rates or compensation payable. . . shall not be in excess of Hospital's CHAMPUS payment rates for equivalent services", (b) the reference to CHAMPUS payment rates effectively referred to TRICARE, as CHAMPUS was TRICARE's predecessor, (c) various policies promulgated to govern TRICARE were matters of federal law that could be imported into the Agreement pursuant Section 4.1 of the Agreement; (d) and MPHC interpreted a TRICARE policy governing patient/member co-payment, co-insurance and deductible obligations to authorize its actions in declining to pay the Hospitals for emergency department services if those services preceded an inpatient admission. In essence, MPHC argued that a subsequent inpatient admission retrospectively rendered the preceding emergency department services free care.

21.     The TRICARE policy[1] cited by MPHC as justification for its breach, TRICARE Policy Manual Section 6010-57M, February 2008, Chapter 2, Section 4.1 paragraph 5.8.2.1.2, (attached hereto as Exhibit C) is inapposite to MPHC's payment obligations under the Agreements, as that provision, and the entire section of the cited TRICARE Policy Manual, expressly deals with <u>beneficiary</u>, i.e. patient/member, "cost-sharing" obligations and not limitations on payments to the Hospitals.

22.     Under the Agreement the Hospitals are to be paid for emergency department services rendered before an inpatient admission at outpatient rates as provided under Section 5, Attachment A of the Agreement; such outpatient charges and payments are to be billed and paid separately from additional compensation for any subsequent inpatient services prescribed under

---

[1] The TRICARE policies relevant to the Complaint, attached as Exhibits C, D and E, are from the so-called "2008 Edition"; certain amendments are reflected in the "2015 Edition" which "are applicable to the East and West Regional Managed Care Support Contracts awarded on or after <u>July 21, 2016</u>" (emphasis added).

the parties' Agreement to be "100% of the TRICARE DRG payment methodology. . ." Agreement at Section 5, attachment A.

23. MPHC's legally erroneous assertion that the TRICARE DRG reimbursement for a subsequent inpatient admission was the limit of its payment obligations to the Hospitals, thereby retroactively forgiving it of any obligation to pay for emergency room services, provides no legal justification for MPHC's breach of its payment obligations to the Hospitals.

24. As of the date of this Complaint, the extent of MPHC's unilateral "recoupment" and its affirmative failures to pay total in excess of $652,332.30.

25. In addition, MPHC's breach of its payment obligations to the Hospitals in the first instance and its failure to correct its underpayments as required by the Agreement constitutes negligent and/or willful acts or omissions by MPHC entitling the Hospitals to recovery of their expenses, including costs and attorneys' fees, as provided by Section 6.6 of the Agreement.

26. The Hospitals' entitlement to payment for its emergency room services at outpatient rates, in addition to payment for inpatient services under the TRICARE DRG payment methodology, is not only the Hospitals' contractual right, it is mandate of federal law pursuant to TRICARE Reimbursement Manual Section 6010.58-M, Chapter 6, Section 5, paragraph 1.0 (attached hereto as Exhibit D), which provides "this policy is mandatory for reimbursement of services provided by either network or non-network providers."

27. The TRICARE DRG-based payments for inpatient services as a matter of TRICARE policy and federal law expressly exclude charges related to outpatient services, including emergency department services:

> "[b]efore calculating the DRG rates and standardized amount, certain modifications to the data base of hospital claims will be made . . . all charges related to services which are not included in the DRG payment will be removed from the data base. These

services include emergency room outpatient services . . . and other similar services".

TRICARE Reimbursement Manual Section 6010.58-M, Chapter 6, Section 5, at paragraph 3.3.3.

28. TRICARE Reimbursement Manual reaffirms that emergency department charges are exempt under federal law from the TRICARE DRG-based payment system: "[t]he following hospital services, even when provided in a hospital are subject to the TRICARE DRG-based payment system, are exempt from the TRICARE DRG-based system and shall be reimbursed under the appropriate procedures: . . . all outpatient services related to inpatient stays." TRICARE Reimbursement Manual at Chapter 6, Section 4, paragraph 3.3, 3.3.6 (attached hereto as Exhibit E).

## COUNT I — BREACH OF CONTRACT

28. The Hospitals reallege each and every allegation set forth in paragraphs 1 through 27, as if fully set forth herein.

29. MPHC has failed to pay the compensation due and owing to the Hospitals under the Agreement.

30. In failing to pay the amounts due to the Hospitals pursuant to the Agreement, MPHC has breached its obligations to compensate the Hospitals as promised.

31. As a direct and proximate result of MPHC's breach of the Agreement, the Hospitals have suffered damages consisting of compensation for the cost of patient care provided by the Hospitals but wrongfully set off or not paid by MPHC in an amount no less than $652,332.30 and additional amounts consisting of the Hospitals' expenses, costs and attorneys' fees caused by MPHC's breach and failure to correct as to which the Hospitals are entitled to indemnity under the terms of the Agreements.

WHEREFORE, the Hospitals respectfully request that the Court enter judgment in the Hospitals' favor and against MPHC as follows:

(a) A judgment that MPHC breached the Agreement;

(b) An award to the Hospitals of an amount no less than $652,332.30 in compensatory contractual damages from MPHC for its breach of the Agreement;

(c) Additional sums representing indemnity due the Hospitals under the Agreement for expenses, costs and attorneys' fees in the amount to be proved at trial; and

(d) Such other relief as the Court deems reasonable and just.

**HCA HEALTH SERVICES OF NEW HAMPSHIRE, INC. d/b/a PORTSMOUTH REGIONAL HOSPITAL AND PARKLAND MEDICAL CENTER**

By its attorneys,

**NIXON PEABODY LLP**

By: /s/Kevin M. Fitzgerald
Kevin M. Fitzgerald, Esq., Bar No. 806
Holly J. Barcroft, Esq., Bar No. 16463
Anthony J. Galdieri, Esq., Bar No. 18594
900 Elm Street, 14th Floor
Manchester, NH  03101-2031
Telephone: (603) 628-4016
kfitzgerald@nixonpeabody.com

Dated: July 28, 2016